May it please the Court, Judge Southwood, Judge Graves, Judge Inglehart, Larry Watts. For Barr Covington, I am accompanied today by a member of the Bar whose first time at the Fifth Circuit, Brandon Mock. He's got the distinction of being licensed in all three of the Fifth Circuit states, so I felt I'd bring him along in case I needed some support, and he's been tremendous support. Any of that by reciprocity, or have you taken three Bar exams? I've taken three Bar exams. Good for you. Welcome. Your Honor, the case, the facts are somewhat, I'm sure, well known to you. As counsel pointed out in his brief, we deposed two police chiefs, two Texas Rangers, a number of other police officers, as well as the defendants. We have a case where the trial board found that, I had a policymaker, found that there had been constitutional damages. It's one of the most egregious facts situations that I've ever seen. I don't have policy, according to the trial court, and I think, unfortunately, what that does is sort of creates an issue. I'm reminded of Newton's Third Law, and in this case, I'm afraid that that's exactly what's going to happen. Not looking for overregulation of cities as they manage their agencies, or underregulation of cities as they manage their agencies, but here we have a case where don't ask, don't tell became the policy in Madisonville. The policy is that we had two police chiefs who knew that there was reason to believe that Jeff Covington, who ascended to a position of being in charge of all the confidential informants, the Canine Drug Corps, and the patrol officers in this small city, was well known to be in a hostile situation with his ex-wife, and it was also well known that he was at least amongst the police officers and shared with police chiefs that he was trying to set her up to get custody of the children. Did I understand correctly there are five police officers in this police department? Do they have a record of firing police officers? I don't think so. I think what they do is we didn't find any significant record of their firing police officers. So five, number five. Five. How many officers? We've had eight police officers. Eight, okay. All right. And so they all work directly under the chief or sheriff, is that right? That's right. Okay. And please forgive him. My hearing aid is sometimes not as functional as I'd like for it to be. But it's a small force. I mean, you get somebody and you don't want to get rid of them. You don't want to look a gift horse in the mouth. The Texas, on its law enforcement officer regulations, has three things that it basically looks for through T-code. Used to be T-close, not T-code. And it looks for L1. It wants to know from the agency when they join, how did they come about, what are their qualifications basically. They do a prototypical psychological screen. And then they want to know are they keeping up with their current professional education. And then the last thing they want to know about terms of separation. Is it a general discharge, honorable discharge, or a disarmable discharge. In this particular case, none of those things were really looked at on Covington. Covington was fired out of he was only doing Viagra. I don't know why he was violating the rules. That's sociopathic in my estimation. And especially when you're brought in to be a police officer to enforce the rules. But he was necessarily out. He went back. He didn't declare. And he was hired. So when I sat here and looked at the case, the first question I've learned over the years to sort of ask is, why did the court want argument on this case? This is a case that has been factually well-developed, I think. And it occurred to me that, well, maybe the court wants to say that one incident like counsel argues, which I don't think it is one incident. I think it's a multiplicity of incidents, a multitude of incidents. But maybe one incident is insufficient. Maybe that's what the court wants. Or maybe the court wants to plug that tunnel hole that Rehnquist left, that Justice Rehnquist left, or that Grandstaff commented on. But I don't think that's right, because in 2018, the elements of Monell were reaccentuated by this court in the Pena v. City of Rio Grande. So I couldn't figure out why. And then I'm at a point where I say, well, this is a very good case for the court. This is a case where I might stand up and say, excuse my brevity, instead of my usual prolixity, and let's just simply say that I think the case should be reversed because I think I pled causation and I think I pled policy. And having tried the case in part last year, a little over a year ago now, September 17th to 20th, to a federal jury in Houston, we received an extremely, I thought, interesting and spiritual verdict. In that particular case, the confidential informant who planted the drugs was not found liable. The Jeff Covington and the other police officer, ex-police officer, were. I thought it was a fair verdict. I think that the only missing party, and of course we had at that point in time the two police chiefs testify, we had the district attorney testify, and I think that the only missing party was the city. Counsel wasn't able to be there because he wasn't able to testify. I think that the only missing party was the district attorney. I think that the only missing party was the district attorney. Could you tell us specifically what policy or policies you identify in the complaint or the amended complaint that, because this is a 12B6, is that right? This case was dismissed on a motion to dismiss? I think the three policies we lay out are 21, on pages 23 and 24. I think it pretty well lays the issues out. I think number one, there was a mismanagement of personnel. I was sort of leaping to that when you said five and I thought you said fired. Probably there should have been more fired than five, and more fired than there were, too. But then the second thing is I think that there was a toleration by both police chiefs because of the size of the department. Well, we'll just not look a gift horse in the mouth. We'll just keep who we've got and do the best we can. Just turn the blind eye. And the third policy I thought was that how we found out about Jeff Covington's being fired at the instance of the United States Army, by the way. His employer couldn't hardly overlook that. But how we found out is in evidence and the record. And he was at the airport on his way out of Iraq. And he ran into his old acquaintance from Madisonville who was a Sims. And Sims asked him, why are you leaving? He said, I got fired for violating drug policy. And he went back. So when we heard that, what I did was call the employer, former employer, and we got records. We did something that used to be pretty routine, calling references. And apparently that was not important. Mr. Clendenin, Chief Clendenin was so happy to get him back. Clendenin testifies in his deposition that there were members on city council that wanted Covington to be hired. They were so impressed with him. You have a negligent hiring claim? I think that it's a failure to screen is a negligent hiring claim. I think that it's not negligent. I think it's just a wrongful hiring. They shouldn't have hired him. Clendenin says that if I had known that... I just thought you were responding to a question about policy. Policy is that I think he was not screened. There was not a proper hiring policy or policy followed by Clendenin or the city in bringing Covington on board. That I think is the policy. I may not have articulated it as an improper hiring, but I did articulate it as a failure to screen before you hired, I thought. I understand your answer. I'm not sure it's related to policy. Well, I've got page 25 of your brief. Yes, sir. I said I have it right in front of me. Okay, thank you. Anyway, I feel like that we've got, that the case should be reversed, and I think that it should go back, and we should have the opportunity to determine whether or not, in fact, this was a moving force in the harm that was suffered by Laura Covington. I have nothing further if you have nothing. Thank you, Mr. Watson. I have a lot further, but I'm not going to bore you with it. Thank you very much. It's good to see you, sirs. Thank you. We'll see you in a few minutes. Good morning. It pleases the Court. William Halfand for the City of Madisonville. The basic incurable infirmity in the appellant's position as it relates to the city is that by her own pleading allegations, what Ms. Covington is complaining of is an act by her husband, outside of his role as a police officer, however co-opting those he knew by virtue of his law enforcement relationships, to do something to his then-wife, now ex-wife. And that's why the trial court said, at 10-10 of the record, in light of Brown v. Bryan County, quote, there can be no inference of a causal link between the city's hiring and supervision practices and supervision process and Covington's misdeeds. And to Judge Engelhardt's question, the actual policy is never stated in the brief, nor is it stated in the complaint, other than to say that the police department improperly supervises, in a general sense, and to Judge Gray's question, is negligent or improperly hired. In fact, on page 25, it says, the city failed to screen. But that's not the factual allegation. And in fact, what Judge Harmon saw, and I think is laid bare by the pleadings here, is Ms. Covington was the victim of her then-husband's misconduct. She was appropriately angry, among other emotions, to be sure, and she had every reason to be Well, let me ask you, because you say she's the victim of her husband's misconduct. It seems to me that he has, in his capacity as a law enforcement officer, he has obtained contraband. He has instructed someone who he's connected to only through his law enforcement position to plant contraband. And then he's also instructing officers that you need to check her out. You need to do a stop and search on her vehicle. In fact, I think the allegation is that he had it done once, suggested one of his colleagues do it once, and he didn't find it, much to the dismay of the husband, as you say. But he's more than a husband in this case. I mean, he's acting in his official capacity and using the resources of the police department, isn't he? No, I don't think he's acting in his official capacity, and he is using resources. He's gleaned from his official capacity work for the police department, but he's not working for the police department. He's not operating under the color of the law that is vested, the state of Texas vested in him by his commission by the police department. What he did, and we now know he did, is he co-opted relationships that he had garnered through his law enforcement activities. And that's really, I think, why the trial court made it clear that while it agreed that Mr. Covington had acted inappropriately, and it acknowledged that the allegations made out claims against Mr. Covington, and to the extent that he co-opted others to have his wife arrested, well, of course, based upon that effort, whether he was acting as a private citizen or a public official, he can be liable under Section 1983. Do you maintain that all of this was done without the knowledge of the police? I think there's two. Clendenin is one, and then Chief May, I believe. That all of this was done unbeknownst to them, or had they in any way been advised that he was having difficulties in utilizing the police department resources and connections? The answer to your question, Your Honor, is absolutely done without the knowledge of the police department's supervisors. And, in fact, the plaintiff doesn't allege that the chief at the time was aware that Mr. Covington was doing any of these things, or attempting to do any of these things, including recommending that other officers stop his wife and search her vehicle. Obviously, that alone is an odd thing. But if she truly had been, hypothetically, carrying drugs and he turned another police officer onto that, that might be something that might be discussed. But there's no allegation, and it would be a false allegation, to suggest that any law enforcement supervisor knew anything of what Mr. Covington was doing. Isn't there an allegation that an officer brought to the attention of Chief May that Covington was plotting to plant evidence or to do something to incriminate his wife? Isn't there an allegation that that occurred? I don't believe so, Your Honor. I think the far as it goes is the allegation that the chief knew that Covington and his wife were having a very acrimonious divorce. The chief did know of an allegation of a use of domestic violence forced by Mr. Covington in the home. But I don't believe that there's any allegation in the complaint that the chief was aware of, to Judge Englehart's question, and I think I'm answering yours, Judge, is that Covington was trying to plant drugs on his wife or have his wife arrested. There's no such allegation in the complaint that I can recall. Again, the point here is the problem with these two allegations is they're backed in, and this is where I was going earlier when I stopped to answer your question, Judge Englehart, is what happened was Ms. Covington said, well, look what my husband's done, and then the question was how could we hold the city responsible for that? It's not that someone can demonstrate a line between hiring this man and planting drugs on his wife. And yet that is what's required by this circuit's precedent in controlling Supreme Court authority. It is not as if someone can draw a line between how the gentleman – the gentleman might be too generous a term at this point – but how Mr. Covington was supervised as a law enforcement officer and what he did outside of his role as a police officer to harm his wife. And there, not only does the brief completely drop off the cliff, as does the complaint, but with respect to my friend Mr. Watts, so does his argument. He hasn't yet told the court what is that line that the trial court demonstrated fails to exist between an alleged decision to hire which was wrongful or an alleged improper supervision that then was the moving force behind Mr. Covington planting drugs on his wife. If we were to accept that – those facts, why wouldn't we have a 1983 claim against a Department of Public Works employee who meets people who can set up his wife and gets drugs from a police officer in the department? Why wouldn't we have a claim against a firefighter, for example, regardless of how they set up their wife? We don't, and the reason for it is – and again, counsel doesn't even address it because it's not in the briefing and it can't be in accordance with Supreme Court or circuit authority. But before I get to that, let me point out that before we even get to that, the problem is we don't have any evidence – which is necessary in the case of, as counsel acknowledges, a lack of a written policy. The argument here is not just that one person was improperly hired. We know that that would never support a claim of a policy sufficient to state a claim against a governmental entity. The allegation is the city acts – and I look – when Mr. Watts was answering Judge Engelhardt's question on page 22, it says the chief disregarded risk in hiring. But the general statement that the chief disregarded risks in hiring fails for two reasons. Well, first of all, Mr. Watts appropriately acknowledged that the city complies with TCOL, the Texas Commission on Law Enforcement. So that demonstrates something other than a lack of deliberate indifference because deliberate indifference would be a failure to follow the guidelines of the state in hiring police officers. What I heard counsel say is that the department did not look into why Mr. Covington had been fired by or had left the employ of a private contractor in Iraq. We know it turns out it's in the briefing Mr. Covington was trying to get somebody local to buy Viagra for him. Would we say that that would rise to the level of an improper hiring? I would respectfully submit heck no. In Brown versus Bryan County, Oklahoma, the United States Supreme Court reversed this court which found the potential for governmental liability on a hiring claim where the sheriff failed to learn of an assault and battery charge against Deputy Tracy Burns, which then later was the plaintiff's allegation of a policy failure in hiring in an excessive force case. So there one could see a line between an assault and battery and an excessive force case. And yet the Supreme Court eschewed that. And so the hiring claim here clearly must fail because as this court has also pointed out, I'm sorry this is Brown, the hiring decision has to reflect deliberate indifference to the violation of a particular constitutional or statutory right, not just a bad hiring decision. And one can only imagine the nature of the claims that we would have if this court authorized a cause of action against a governmental entity based upon what might be called here at best negligent hiring. But the same is true of the failure to supervise claim. There are no allegations that any other Madisonville police officer was found to have committed any constitutional violation. And yet the appellant acknowledges that the department investigated its own officers, sometimes firing, as Mr. Watts misheard Judge Engelhardt's question, officers who had violated departmental policies below the level of constitutional rights. And so the plaintiff's own allegations belie her assertion that the department doesn't supervise its officers. But even if that policy, whether it was hiring or supervision, were inadequate, this court has said numerous times, including in Gonzalez versus the Isleta Independent School District, it's in my brief at page 18, that an inadequate policy without more is sufficient to meet the threshold of municipal liability. Rather, as this court explained in Snyder versus Trepanier, there must be, and I'm quoting now, at least a pattern of similar incidents in which citizens were injured to establish the official policy requisite to municipal liability. So we have an obvious failure observed by the trial court, which is this is a single incident in which an egregious act of misconduct occurred. Whether, Judge Engelhardt, we treat it as one by a police officer, or we treat it by one who is acting in his private capacity but who happens to be a police officer, does not change the outcome in light of Supreme Court and this circuit's authority. The outcome is the same because we have a single isolated incident, and we don't have the direct line that the Supreme Court explained in Brown that the deprivation of which the plaintiff complains must be a plainly obvious consequence. I'm using their words there, plainly obvious consequence of the alleged policy. The mere fact, and again I'm quoting the Supreme Court, I'm sorry, this is this court in Lewis versus Pugh, the mere fact that a policymaker, let me quote it correctly, knowledge on the part of a policymaker that a constitutional violation will most likely result from a given official policy is a sine qua non of municipal liability. And there the trial court correctly observed that is completely lacking. There is an inchoate allegation that because Mr. Covington was working for the police department and then did some bad thing, and I'm not taking away any of the badness, he must have been improperly hired or improperly supervised. And that simply does not track the authority of this court. I would be remiss if I didn't take just a moment to address the issue of ratification. Here the appellant failed to allege factually that an appropriate city policymaker approved of unconstitutional conduct and the exact basis for it, both of which are required by this court's opinion in Beatty versus Madison County School District. I don't believe it's the same Madison County, by the way. A decision, this court's made it clear that a decision not to discipline an individual is not as a matter of law ratification. That's Berry versus McLemore, citing Frere versus Arlington. And the mere fact that a policymaker initially defends employees, which is the plainest, most damning allegation against the chief, is not, I'm sorry, the mere fact that a policymaker initially defends an employee's conduct that is later, in this case 15 months later, found to be illegal is not ratification. Perhaps the best explanation of the failure of the ratification allegation here is the appellant's dogged insistence that this court follow Grandstaff versus Borger or Borger, and I'm never sure which way to pronounce that. But, of course, this court has repeatedly held that Grandstaff is a unique case and that its application must be confined to those circumstances that are uniquely egregious. Mr. Watts asked why would the court grant oral argument. I'm sure it's not to turn the law of governmental immunity on its head, but that's what the appellant's asking. We know that respondeat superior would be insufficient to state a claim against the government, a city in this case. And yet the appellant here is asking for a theory of governmental liability that's less than respondeat superior because the plaintiff is not even alleging that Mr. Covington did this in the course and scope of his employment or as a servant for his master, from which the theory of respondeat superior comes. The appellant is asking this court to create a theory of governmental liability that's lesser than that, which turns on he did something bad and he worked for the city. And I would respectfully submit that that is something that I assume the court did not grant oral argument to do and that the court should not do. Thank you. Appreciate your time. Thank you, counsel. Thank you. Brandon pointed out, Judge Graves, that I was less than completely direct to your question. This is not simply a negligent hiring case. That's not the policy we're talking about in and of itself. We're talking about a failure to screen. We're talking about a failure to manage. And what we're talking about is tolerating a level of incompetence or perfidy that is destructive of the entire agency. And, by the way, this Fourth and Fourteenth Amendment case was well-fled, I thought, on that point. I do think it's also important for me to point out to you that Mr. Covington was not acting rogue. He was not acting outside of the knowledge of the department. If you'll remember, Deputy Trooper Clary, at the time of the incident in his report, and it's in the pleading, he noticed that the entire police department, all five or eight of them, were swarming the arrest scene, circling to make sure of what was going on. Their boss, Covington, was on the phone telling him where to look, telling him what to look for. And that was what turned Clary to make sure that he took it to a great Texas ranger, Andres De La Garza, who immediately started the investigation and found the failures that Ranger Jeter had overlooked, not only on this guy but on the other officers that had been interned into him. The plan, was his plan to plant drugs something that was not known? No, because in the pleading, and we pointed out that in our brief at 7, and by the way, I said 25, 25 and 19, or 13, excuse me, or pages that deal with that. But in October 2011, David Sims, who was the IT guy, informed Chief May, the second police chief, that Jeffrey Covington had a plan to plant drugs on Laura's vehicle because of their custody battle. The chief was told. That's at the record on appeal, 819, paragraphs 238-241, record on appeal 821-252. The other officers were also informed, Chief May, about Jeffrey's planned scheme, record on appeal 820-240, record on appeal 824, paragraph 260. This didn't just pop up. They knew what was going on. This is not a once, one-off deal. Counsel, what is your best case on a failure to supervise claim? What circuit case do you think the Court should look at in considering your failure to supervise claim? I think Grandstaff v. Borger tells us that where there is a customer practice where life and limb of citizens are placed at risk, that, well, here I think you had the customer practice in Madisonville of letting much-needed cops at whatever risk to the public stay, and that failure to screen, that failure to hire, that failure to call the references, that failure to look at their history, that failure to look at specific— But that's hiring, and what I'm asking about specifically is a failure to supervise. Well, Jeffrey Covington was the number one guy in charge of the— No, I understand. I'm asking for your best case. You mentioned, Branstad, is your best case on the supervision claim. Well, I think that the chief had a duty to supervise, and I think that the chief didn't supervise. He got word from Sims, and he got word from other police officers that Covington is out to get his ex-wife. He's out to have a drug dealer plant drugs on her. And in the pleadings we point out, May said, I'm not going to believe those crackheads. That's a failure to supervise. Why don't you simply say, well, let's look into it? And what case can we look at? What case can we look at that supports your claim? I understand the factual allegations. I want to know what case you think this circuit has issued that supports your claim and would give you the relief or authorize the relief you seek from us. I'm at a loss to give that to you right now, Judge Engelhardt, but if you would grant me permission within 48 hours or 24 hours, whatever you tell me, I'll send you and counsel a copy of citations on that particular point. That would be fine. Thank you, Judge Selfridge. I have nothing for you. Thank you very much. All right, counsel, for both sides.